IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TONIE C. B., | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) 1:22CV269<br>) |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security, | )<br>)<br>) |
| Defendant. | )<br>) |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Tonie C. B. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on March 2, 2020, alleging a disability onset date of March 2, 2019. (Tr. at 15, 195-96.)[1] Plaintiff's application was denied initially (Tr. at 58-73, 97-105) and upon reconsideration (Tr. at 73-92, 107-14). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 115-16.) On July 15, 2021, Plaintiff, along with her attorneys, attended the subsequent

---

[1] Transcript citations refer to the Sealed Administrate Record [Doc. #8].

telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 15.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 25), and on February 28, 2022, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date, March 2, 2019. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease; and fracture of the left lower extremity[.]

(Tr. at 17.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 19.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following, additional limitations:

> [Plaintiff] can sit, stand and walk for 6 hours each total in an 8-hour day; she can stand and walk for 30 minutes at a time followed by 5 minutes of sitting; [Plaintiff] can occasionally climb ramps and stairs, and never climb ladders, ropes, poles or scaffolds; she can occasionally stoop and crawl; [Plaintiff] can frequently balance, kneel and crouch; and she must avoid concentrated exposure to hazards.

(Tr. at 19-20.) At step four of the analysis, the ALJ determined, based on the above RFC and the vocational expert's testimony, that Plaintiff remained capable of performing past relevant

5

work as an ophthalmology assistant. (Tr. at 24.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 24.)

Plaintiff now challenges the ALJ's failure to include, or to explain the absence of, any RFC limitations to account for Plaintiff's mild limitations in concentration, persistence, and pace. (Pl.'s Br. [Doc. #13] at 1.) At step two of the sequential analysis, the ALJ acknowledged treatment records documenting anxiety and depression and found that both of these diagnoses constituted medically determinable mental impairments. (Tr. at 18.) However, the ALJ further determined that these impairments, "considered singly and in combination, [did] not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and [were] therefore non-severe." (Tr. at 18.) In making this finding, the ALJ relied on the medical records themselves:

> Primary care providers noted situational depression on March 29, 2019. They noted a history of anxiety on August 28, 2018, and the claimant reported anxiety on February 5, 2020. However, the claimant denied depression and anxiety on August 28, 2018. A psychiatric review of symptoms on March 22, 2018 was negative, and primary care providers reported on February 5, 2020 that the claimant was doing well on Prozac. The claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe.

(Tr. at 18) (internal citations omitted.) As part of the analysis, the ALJ specifically considered the four broad areas of mental functioning, also known as the "paragraph B" criteria, set out in the regulations. (Tr. at 18); see also 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.00E. These areas of mental functioning are (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting and managing oneself. (See Tr. at 18-19.) For each of these areas, the ALJ must rate Plaintiff's

degree of limitation as none, mild, moderate, marked, or extreme. 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.00F(2).

In the present case, the ALJ found that Plaintiff had a mild limitation in concentration, persistence, and pace, but no limitations in any other functional area. (Tr. at 18-19.) Notably, in analyzing Plaintiff's mild limitation in concentration, persistence, and pace, the ALJ emphasized evidence of Plaintiff's many abilities in this area based on her own reports, noting as follows:

> [Plaintiff's] husband reported on May 6, 2020 that [Plaintiff's] ability to pay attention was not limited, and that she follows written and spoken instructions well. [Plaintiff] handles changes in routine well. [Plaintiff] reported on May 12, 2020 that she drives, showing that she can pay attention to multiple stimuli. [She] handles stress ok with Prozac, and she handles changes in routine ok. She can do all personal financial functions, showing enough persistence to do multistep tasks. Furthermore, examiners noted on January 29, 2019 and March 18, 2019 that [Plaintiff] was alert, showing good apparent concentration.

(Tr. at 18-19) (internal citations omitted) (citing Tr. at 230, 248, 250, 251, 337, 341.) In fact, in Plaintiff's Adult Function Report, which was relied on by the ALJ, Plaintiff stated that she could pay attention "as long as needed" and could follow written instructions "very well." (Tr. at 250.) Similarly, the State agency psychological consultants at both the initial and reconsideration levels set out the following explanation for finding no severe mental impairments or related limitations despite Plaintiff's mild limitation in concentration, persistence, and pace:[4]

> [Plaintiff] alleging depression. No prior filings. [Medical evidence of record] indicates a remote [history of] situational depression [due to] social situations

---

[4] The State agency psychological consultants found Plaintiff mildly limited in all four "paragraph B" criteria. (See Tr. at 64, 83.) However, Plaintiff does not challenge the ALJ's finding of no limitation in the remaining three functional areas.

7

that occurred at work in 2019 and anxiety/social phobia. She is taking [the medication] fluoxetine 20mg through her PCP.

She has no prior psychiatric IP's and is not receiving consistent formal [mental health treatment]. [Evidence] from treating sources is rather unremarkable for mental health [symptoms]. Third party reports [Plaintiff] is capable of handling her own self-care, she is able to go out alone, drive, shop in stores[,] and manage her own finances. She socializes and has no limitation in her ability to pay attention. She finishes what she starts, follows written and verbal instructions "good." She gets along with authority figures and handles changes in routine [well]. As such, [Plaintiff's symptoms] appear to be controlled. Therefore, evidence supports non-severe mental impairment(s). Statements are partially consistent with evidence.

(Tr. at 64, 83-84.) At the reconsideration level, the state agency psychologist noted Plaintiff's allegation that her depression was causing more mood swings and anxiety around larger groups of people. (Tr. at 84.) However, the state agency psychologist went on to note that, despite this assertion, there was "no additional mental evidence" and that Plaintiff's "level of functioning appear[ed] similar to that at [the consultative examination]." (Tr. at 84.) The state agency psychologist therefore concluded that the "prior level administrative medical findings remain consistent [and] assessment [was] unchanged at [the reconsideration] level." (Tr. at 84.)

In crafting the RFC, the ALJ noted that he "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe." (Tr. at 18.) The ALJ also noted that Plaintiff testified that the reason she felt that she could not go back to her past job was "because of neck and back pain" (Tr. at 20), and the ALJ therefore focused much of his discussion on Plaintiff's neck and back impairments. Nevertheless, the ALJ also considered Plaintiff's non-severe mental impairments in setting the RFC, and the ALJ specifically considered the opinions of the State agency psychological consultants and explained that he

8

Case 1:22-cv-00269-JEP   Document 17   Filed 09/25/23   Page 8 of 12

found them persuasive "because they are supported by the record and consistent with [Plaintiff's] report, which shows no to mild deficits in cognitive, social and adaptive functions." (Tr. at 23.) In addition, with respect to Plaintiff's depression and anxiety in assessing the RFC, the ALJ noted that Plaintiff "has no problems with personal care," can drive, do laundry, shop in stores, take care of her personal finances, socialize with family, and attend church. (Tr. at 23.) The ALJ also found that Plaintiff "follows written and spoken instructions well," "gets along well with authority figures," can handle stress with Prozac, and "handles changes in routine well." (Tr. at 23.)

It does not appear that any other medical opinion evidence, or, for that matter, any evidence at all, suggests a need for mental RFC restrictions in the present case. Significantly, Plaintiff did not raise the issue of her mental health at the administrative hearing. Although her counsel asked the vocational expert about the impact of concentration difficulties on a hypothetical individual's ability to work, he provided no record basis for this question. (Tr. at 55.) Moreover, Plaintiff specifically stated that she left her job because she couldn't perform it due to her physical impairments, rather than any mental limitations (Tr. at 20, 39-40; see also Tr. at 226), and she fails to explain why mental limitations would now prevent her from returning to the same work.

Nevertheless, Plaintiff contends that her mild limitations in concentration, persistence, or pace should have been accounted for in the RFC, based on the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). In Mascio, the Fourth Circuit held that if moderate limitations in concentration, persistence, or pace are reflected at step three, the ALJ

9

should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Mascio, 780 F.3d at 638 (internal citation omitted).

In the present case, unlike in Mascio, the ALJ found only mild, rather than moderate, restrictions in functioning. (Tr. at 18-19.) More importantly, as set out above, he made these findings in the course of his discussion at step two of the sequential analysis, supporting his conclusion that Plaintiff's mental impairments "do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore non-severe." (Tr. at 18.) This analysis differs from the typical Mascio scenario, in which the ALJ, having already identified one or more mental impairments as severe at step two, then performs a step three evaluation as to whether the degree of functional limitation resulting from a claimant's mental impairment(s) meets or equals a listed impairment. The challenges in Mascio and its progeny therefore stem from the ALJ's failure, or alleged failure, to include limitations from the claimants' severe impairments in the RFC.

Plaintiff cites cases in which courts, including the Middle District of North Carolina, have extended Mascio to mild limitations. (See Pl.'s Br. at 16-19) (citing McMichael v. Colvin, No. 1:15CV528, 2016 WL 4556768 (M.D.N.C. Aug. 31, 2016); Ashcraft v. Colvin, No. 3:13-CV-00417-RLV-DCK, 2015 WL 9304561 (W.D.N.C. Dec. 21, 2015); Boone v. Saul, No. 1:20-

CV-00094-GCM-DCK, 2021 WL 1667228 (W.D.N.C. Apr. 28, 2021)). However, other cases in this District have noted that "the weight of post-Mascio authority among the district courts in the Fourth Circuit does not favor extending Mascio to mild limitation[s] in CPP." Spradley v. Saul, No. 1:20CV337, 2021 WL 1739013, at *7 (M.D.N.C. May 3, 2021) (collecting cases); see also Pickett v. Kijakazi, No. 1:21CV500, 2022 WL 3908862, at *4 (M.D.N.C. Aug. 30, 2022); Baucom v. Saul, 1:18CV819, 2020 WL 978256, at *10 (M.D.N.C. Feb. 28, 2020); Younger v. Berryhill, No. 2:18-cv-182, 2019 WL 3432771, at *5 (E.D. Va. June 21, 2019).

Moreover, even assuming that Mascio should be applied even in the context of mild limitations in the broad areas of functioning, Plaintiff fails to show any error on the part of the ALJ. Notably, all three of the cases relied upon by Plaintiff involve situations where the ALJ neglected to include any discussion of Plaintiff's non-severe mental impairments when formulating the RFC. See McMichael, 2016 WL 4556768, at *4; Ashcraft, 2015 WL 9304561, at *9-10; Boone, 2021 WL 1667228, at *3. In contrast, as set out at length above, in formulating the RFC in the present case the ALJ expressly relied on the medical opinions of the state agency psychological consultants in concluding that Plaintiff did not have any work-related limitations as a result of her non-severe mental impairments, and the ALJ described his reasons for doing so in a full paragraph citing supporting evidence, including information from Plaintiff's own functional report. (Tr. at 23.) Consistent with the directives of Social Security Ruling 96-8p, this discussion focused on Plaintiff's "abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Social Security Ruling 96-8p: Titles II and XVI: Assessing Residual

11

Functional Capacity in Initial Claims, SSR 96-8p, 61 Fed. Reg. 34474, 34477, 1996 WL 374184 at *6 (July 2, 1996). This discussion provides "an accurate and logical bridge" explaining the omission of any specific concentration, persistence, or pace limitations from the RFC. Significantly, Plaintiff points to no evidence suggesting a need for greater—or any—limitations in this area. She simply contends that, having made a finding of mild limitation at step two of the sequential analysis, the ALJ was obligated to include mental RFC restrictions or explain their absence. However, in this case the ALJ did explain their absence, and specifically relied on the state agency psychological opinion evidence to explain why he included no mental limitations in Plaintiff's RFC, as well as the medical record and Plaintiff's own functional reports. Cf. Shinaberry v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020). In the circumstances of this case, substantial evidence supports that ALJ's omission of mental limitations from Plaintiff's RFC assessment, and Plaintiff's Mascio challenge is without merit.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #12] is DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 25th day of September, 2023.

/s/ Joi Elizabeth Peake<br>
United States Magistrate Judge